# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERENICE SALINAS-MONDRAGON, | Case No. 1:26-cv-00739-JLT-EPG-HC |
| Petitioners, | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART RESPONDENTS' MOTION TO DISMISS, GRANT IN PART AND DENY IN PART FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS, AND ORDER RESPONDENTS TO PROVIDE PETITIONER WITH BOND HEARING |
| v. | |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |
| | (ECF Nos. 17, 20) |
| | ORDER TERMINATING PETITIONER'S REQUEST FOR RULING |
| | (ECF No. 22) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

For the reasons set forth herein, the undersigned recommends granting in part and denying in part Respondents' motion to dismiss, granting the first amended petition for writ of habeas corpus on Claim III and denying all other claims, and ordering Respondents to provide Petitioner with a bond hearing.

\\\

\\\

\\\

1

# I.

# BACKGROUND

Petitioner is a citizen of Mexico who was encountered by Border Patrol officers on February 1, 2024 near the Sasabe port of entry in Arizona. (ECF No. 10-1 at 2.[1]) Petitioner was placed in removal proceedings and released on an order of release on recognizance in February 2024. (ECF No. 1 at 2.) On February 26, 2025, Petitioner was enrolled in the Alternatives to Detention ("ATD") program. (ECF No. 10-1 at 2.)

On June 22, 2024, Petitioner was arrested for battery to a spouse and child abuse with possible death or gross bodily injury. On September 15, 2024, Petitioner was arrested for inflicting corporal injury to a spouse. On December 25, 2025, Petitioner was arrested for two counts of child abuse with possible death or gross bodily injury and one count of battery to a spouse. (ECF No. 10-1 at 3.)

On December 30, 2025, Petitioner appeared for a scheduled check-in and was re-detained by U.S. Immigration and Customs Enforcement ("ICE") without prior notice and has not been provided with a bond hearing. (ECF No. 17 at 2; ECF No. 10-1 at 3.) The Form I-213 states that on December 30, 2025, Petitioner "was terminated from the ATD program due to failure to remain in compliance with the program's conditions" for her "three arrests for domestic violence related violations." (ECF No. 10-1 at 3.)

The FAP alleges that while detained, Petitioner began experiencing severe abdominal pain, vomiting, shaking, and difficulty moving, and despite these symptoms, Petitioner did not immediately receive medical treatment. Petitioner eventually was transported to a hospital and underwent emergency surgery to remove her appendix. (ECF No. 17 at 2–3.)

On January 28, 2026, Petitioner filed a petition of writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On February 2, 2026, the assigned district judge denied the motion for TRO, referred the matter to the undersigned for a determination on the merits, and set a briefing schedule. (ECF No. 12.) On February 28, 2026, Respondents filed an answer. (ECF No. 14.)

---

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

On April 3, 2026, the Court granted Petitioner's motion to amend. (ECF No. 16.) On April 6, 2026, Petitioner filed the first amended petition ("FAP"). (ECF No. 17.) On April 23, 2026, Respondents filed a motion to dismiss.[2] (ECF No. 20.) On April 28, 2026, Petitioner filed an opposition to the motion to dismiss. (ECF No. 21.)

## II.

## DISCUSSION

### A.  Claims I and II: Medical Care and Conditions of Confinement

In Claim I of the FAP, Petitioner asserts that "[c]ivil immigration detainees have a constitutional right to adequate medical care" and "Respondents' failure to ensure timely medical treatment and appropriate post-operative care constitutes deliberate indifference to Petitioner's serious medical needs in violation of the Fifth Amendment." (ECF No. 17 at 3.) In Claim II of the FAP, Petitioner asserts that the conditions of her confinement "place[] her at risk of further medical harm" and "violate the constitutional protections afforded to civil detainees." (Id.) In the motion to dismiss, Respondents argue that "the Court should deny habeas relief on any ground asserting inadequate medical treatment" because a "civil rights action, not a habeas claim, is the avenue to redress such assertions." (ECF No. 20 at 3.)

The Ninth Circuit has stated:

> *Pinson* [*v. Carvajal*, 69 F.4th 1188 (9th Cir. 2024),] solidified the rule that a habeas claim is one challenging the fact of confinement, rather than the conditions of confinement. In *Pinson*, two inmates sought habeas relief, arguing that the conditions of their incarceration during the COVID-19 pandemic violated the Eighth Amendment. *Pinson*, 69 F.4th at 1062. This court rejected claimant Sands's argument that only habeas relief could ameliorate the harm inflicted on him by the government's ongoing failure to sufficiently treat his underlying illnesses and protect him from exposure to the coronavirus. *Id.* at 1063, 1065–66, 1075. In so doing, this court affirmed the district court's dismissal of claimant Sands's habeas petition for lack of jurisdiction, delineating that "the relevant question is whether, based on the allegations in the petition, release is *legally required* irrespective of the relief requested." *Id.* at 1072, 1076. In dismissing the petition, this court concluded that claimant Sands appeared to challenge only the conditions of his confinement and not the underlying legal basis

---

[2] Respondents' motion to dismiss was untimely filed. However, in the interest of justice, the Court will consider the motion.

for that confinement, and therefore his claim was "outside the core of habeas." *Id.* at 1073.

Doe v. Garland, 109 F.4th 1188, 1194 (9th Cir. 2024). As Claims I and II only challenge medical care and conditions of confinement rather than the underlying legal basis for Petitioner's confinement, the undersigned recommends finding that the motion to dismiss should be granted on this ground and Petitioner is not entitled to habeas relief on Claims I and II.[3]

### B. Claim III: Procedural Due Process

In Count III of the FAP, Petitioner challenges her detention on procedural due process grounds, asserting that she was arrested during a scheduled compliance check-in without notice, an opportunity to be heard, or a hearing before a neutral decisionmaker. (ECF No. 17 at 3–4.) In the motion to dismiss, Respondents argue that "Petitioner is subject to mandatory detention." (ECF No. 20 at 3.) Respondents previously argued that Petitioner is "an 'applicant for admission' who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2)." (ECF No. 10 at 2.)

"The various legal arguments relied upon by Respondents to support this assertion [that Petitioner's detention is mandatory under 1225(b) while his removal proceedings are pending] have been rejected by this Court in other proceedings." J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *9 (E.D. Cal. Dec. 9, 2025). See Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v.

---

[3] To the extent the Ninth Circuit has left the question of whether conditions of confinement claims are redressable through a habeas petition in the immigration detention context, see Roman v. Wolf, 977 F.3d 935, 938, 941–42 (9th Cir. 2020), the undersigned recommends finding that Petitioner is not entitled to relief because the FAP fails to allege sufficient factual allegations to establish that Petitioner's medical care and conditions of confinement violate the Fifth Amendment.

Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas at 690. Relying on Morrissey v. Brewer, 408 U.S. 471 (1972), courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025).

Respondents' arguments have been rejected by this Court in other proceedings, and Respondents have not distinguished this matter from the Court's prior decisions that have granted habeas relief for similar claims. Accordingly, the undersigned recommends denying Respondents' motion to dismiss on this ground and granting Claim III of the FAP for the reasons stated in the cases set forth above.

**C. Claim IV**

In Claim IV of the FAP, Petitioner raises a due process claim for "unlawful family separation and interference with proceedings," arguing that "Respondents' actions have unlawfully separated Petitioner from her minor children and interfered with ongoing immigration proceedings involving her family" because "Petitioner's minor children are now required to appear in immigration court while their mother remains detained" and by "preventing her participation in proceedings involving her children, Respondents have deprived both Petitioner and her children of a meaningful opportunity to be heard." (ECF No. 17 at 4.)

\\\

\\\

5

This Court has previously rejected a similar family separation argument:

To violate "the well-established substantive due process right to family integrity," "the alleged conduct must 'shock[ ] the conscience' and 'offend the community's sense of fair play and decency.' " Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1154 (9th Cir. 2012) (alternation in original) (quoting Rochin v. California, 342 U.S. 165, 172–73 (1952)). The Court finds Aguilar v. U.S. Immigration & Customs Enforcement Division of the Department of Homeland Security, 510 F.3d 1 (1st Cir. 2007), instructive and persuasive. Aguilar involved hundreds of undocumented noncitizens who were detained following a raid on a factory in Massachusetts. Due to a shortage of bed space in Massachusetts, ICE transported a substantial number of the detainees to distant locations, such as Texas. Id. at 6. The Aguilar class alleged that ICE's actions violated, *inter alia*, their substantive due process rights of family integrity and of parents to make decisions as to the care, custody, and control of their children. Id. at 7, 18–19. In finding that there was no violation of the class's substantive due process rights, the First Circuit stated:

> Our thinking is influenced by a realization that the evenhanded enforcement of the immigration laws, in and of itself, cannot conceivably be held to violate substantive due process. *See Payne–Barahona*, 474 F.3d at 2; *de Robles v. INS*, 485 F.2d 100, 102 (10th Cir. 1973). Any interference with the right to family integrity alleged here was incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country. *See Demore*, 538 U.S. at 523, 123 S.Ct. 1708 (recognizing "detention during deportation proceedings as a constitutionally valid aspect of the deportation process").

> This is critically important because every such detention of a parent, like every lawful arrest of a parent, runs the risk of interfering in some way with the parent's ability to care for his or her children. *See Payne–Barahona*, 474 F.3d at 3. That a detention has an impact on the cohesiveness of a family unit is an inevitable concomitant of the deprivation of liberty inherent in the detention itself. So long as the detention is lawful, that so-called deprivation of the right to family integrity does not violate the Constitution.

> We hold, therefore, that such an incidental interference, standing alone, is not of constitutional magnitude. To rule otherwise would risk turning every lawful detention or arrest of a parent into a substantive due process claim. That would place new and unprecedented constraints on law enforcement activities. Such constraints would be unwarranted.

> ...

> We see the matter this way. Although the interest of parents in the care, custody, and control of their offspring is among the most venerable of the liberty interests protected by the Fifth Amendment, *see, e.g., Troxel*, 530 U.S. at 65, 120 S.Ct. 2054; *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 20 (1st Cir. 2001), the petitioners have not demonstrated that this guarantee of substantive due process encompasses their assertions. After all, the right to family integrity has been recognized in only a narrow subset of circumstances.

> To be sure, the petitioners cite cursorily to cases that deal with this right but they conspicuously fail to build any bridge between these cases and the facts that they allege. We do not think that this is an accident. The petitioners' claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity. They have not alleged that the government has interfered permanently with their custodial rights. *See, e.g., Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Nor have they alleged that the government has meddled with their right to make fundamental decisions regarding their children's education, *see, e.g., Meyer v. Nebraska*, 262 U.S. 390, 400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), or religious affiliation, *see, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Taken most favorably to the petitioners, the interference alleged here is transitory in nature and in no way impinges on parental prerogatives to direct the upbringing of their children.
>
> We have scoured the case law for any authority suggesting that claims similar to those asserted here are actionable under the substantive component of the Due Process Clause, and we have found none. That chasm is important because, given the scarcity of "guideposts for responsible decisionmaking in this unchartered area," courts must be "reluctant to expand the concept of substantive due process." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

Aguilar, 510 F.3d at 22–24 (footnote omitted).

Like the petitioners in Aguilar, Petitioner's "claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity." 510 F.3d at 23. The Court recognizes the burden Petitioner's immigration proceedings and prolonged detention has placed on her family and is sympathetic to her situation. However, Petitioner has provided no authority in support of her claim.

Ortiz-Chavez v. Chestnut, No. 1:26-cv-01182-JLT-SAB-HC, 2026 WL 1146068, at *8–9 (E.D. Cal. Apr. 28, 2026), report and recommendation adopted, 2026 WL 1329728 (E.D. Cal. May 13, 2026).

Similarly, here, Petitioner's "claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity." Aguilar, 510 F.3d at 23. Additionally, Petitioner has provided no authority in support of her claim. Accordingly, the undersigned recommends finding that Petitioner is not entitled to habeas relief on Claim IV.

**D. Claim V**

In Claim V of the FAP, Petitioner asserts that her continued detention is arbitrary and serves no legitimate regulatory purpose because "[i]n deciding to detain Petitioner, ICE failed to

meaningfully consider humanitarian equities" and "Petitioner had demonstrated compliance with supervision requirements and posed no flight risk[.]" (ECF No. 17 at 4.) The Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." Demore v. Kim, 538 U.S. 510, 523 (2003). Petitioner's argument that her continued detention is arbitrary because "[s]he does not pose a risk of flight or a danger. . . might be correct. But that is what bond hearings are for." Martinez Leiva v. Becerra, No. 23-cv-02027-CRB, 2023 WL 3688097, at *5 (N.D. Cal. May 26, 2023). "The same is true of [any] argument that continued detention is excessive in relation to the government's interest . . . . It is correct only if [Petitioner] is correct that [s]he poses no risk (or a manageable risk) of flight or danger, something that [s]he has not yet had the opportunity to prove." Martinez Leiva, 2023 WL 3688097, at *5. Accordingly, the undersigned recommends finding that Petitioner is not entitled to habeas relief on Claim V.

### E. Appropriate Relief

Courts in this district have taken differing approaches to the relief granted to petitioners who have been released, subsequently re-detained, and denied bond hearings in violation of due process. In some cases, the immediate release of the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304 (E.D. Cal. Dec. 8, 2025) (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G. v. Chesnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108 (E.D. Cal. Dec. 9, 2025)

(ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025) (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826 (E.D. Cal. Nov. 12, 2025) (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, Petitioner was re-detained after she was arrested for two counts of child abuse with possible death or gross bodily injury and one count of battery to a spouse and terminated from the ATD program. (ECF No. 10-1 at 3.) Accordingly, the undersigned recommends finding that a post-deprivation hearing is the appropriate remedy.

## III.

## RECOMMENDATION & ORDER

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Respondents' motion to dismiss (ECF No. 20) be GRANTED IN PART and DENIED IN PART;

2. The first amended petition for writ of habeas corpus (ECF No. 17) be GRANTED on Count III and DENIED with respect to all other claims; and

3. Respondents be directed to provide Petitioner with a bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), at which

   a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at 1203, and

   b. the immigration judge should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond.

Further, Petitioner's request for ruling (ECF No. 22) is TERMINATED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 6, 2026**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE

10