**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BERENICE SALINAS-MONDRAGON,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | Case No. 1:26-cv-00739-JLT-EPG<br>A-Number: 245-782-207<br>ORDER DENYING PETITIONER'S MOTION TO ENFORCE JUDGEMENT<br>(Doc. 27) |

On July 27, 2026, this Court adopted the findings and recommendations issued by the assigned magistrate judge in this case to grant Petitioner Bernice Salinas-Mondragon's petition for a writ of habeas corpus. (Doc. 25.) The Court ordered Respondents to provide Petitioner with a constitutionally compliant bond hearing at which Respondents are to bear the burden of proof by clear and convincing evidence to show that Petitioner presents a flight risk or danger to the community. (*Id*. at 2.) On August 5, 2026, a bond hearing was held pursuant to this Court's order. (Doc. 27 at 2.) On August 13, 2026, Petitioner filed a motion to enforce the Court's judgment, seeking an order requiring his immediate release or, alternatively, a new bond hearing. (Doc. 27.) Respondents did not substantively oppose the motion but submitted to the Court the audio of the August 5, 2026, bond hearing. (Docs. 29, 30.) For the reasons set forth below, the motion is **DENIED**.

///

## I. LEGAL STANDARD

This Court has clear authority to ensure that the Government acts in accordance with its orders granting relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. 17-cv-5948, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).

In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id*. (citation and quotations omitted); *see also Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (The Court's review for abuses of discretion is limited to those which allege violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions) (citation and quotations omitted). In other words, the Court's review is effectively limited to whether the IJ's decision "reflects 'clear legal error' or is unsupported by sufficient evidence." *Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020). While district courts are "under no obligation to address [Petitioner's] new arguments under the ambit of ensuring compliance with the earlier order," *Leonardo* 646 F.3d 1157 at 1161, the reviewing court must always bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

As a threshold matter, the Court waives the prudential exhaustion requirement in this case for habeas petitions seeking relief pursuant to 28 U.S.C § 2241. *See Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*,

548 U.S. 30, 126 (2006); *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823 at *5, n.7 (E.D. Cal. Jan. 29, 2026) (waiving exhaustion for enforcement motion challenging the legality of a bond hearing because of irreparable harm from prolonging the petitioner's already lengthy detention); *see also, Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307 (E.D. Cal. Mar. 13, 2026) (excusing exhaustion despite the petitioner not making "an explicit showing" of an excuse in the motion to enforce, because the court had previously found ongoing irreparable harm in its previous order). Such a waiver, however, does not expand the narrow scope of the Court's review: the Court will only determine whether the bond hearing was constitutionally adequate as required by its prior order, and not delve into areas of discretionary decisions made by the IJ. *See, infra*, Legal Standard.

**B. Adequacy of the Bond Hearing**

Having carefully considered and reviewed Petitioner's submissions and the digital audio recording of the August 5, 2026, bond hearing, the Court finds that that Petitioner has not demonstrated that Respondents failed to comply with its prior habeas order or that the IJ abused his discretion in such a way as to violate Petitioner's due process rights. Petitioner contends that, although the hearing occurred, the IJ's ruling denying bond failed to comply with the Court's Order because he found Petitioner to be a danger based solely on arrests and dismissed criminal charges. (Doc. 27 at 2-3.)

The Court's prior order required the government to provide Petitioner with an individualized bond hearing before an immigration judge. The government complied with that directive. Within the time prescribed by the Court, Petitioner appeared before an immigration judge, was represented by counsel, presented documentary evidence and testimony, including mitigating evidence of her sponsor and her two children, argued for release, and received an oral ruling denying bond. In short, the government provided the hearing as ordered. Furthermore, the IJ explicitly acknowledged at the outset of the hearing that Respondents had the burden of proof to show by clear and convincing evidence that Petitioner poses either a danger to the community or a flight risk. The Ninth Circuit has explained that if the immigration court "expressly cited and applied the relevant case law in rendering its decision," the Court accepts that it "applied the

correct legal standard," unless there is an indication that "something is amiss." *Martinez*, 124 F.4th at 785 (cleaned up); *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009).

The Court finds no indication that "something is amiss" in either the IJ's oral or written decision. IJ's have broad discretion to consider a number of factors to determine whether the detainee merits release on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). The non-exhaustive factors include: whether the person has a fixed address in the United States; length of residence; family ties and their connection to available immigration relief; employment history; record of appearance in court; criminal record "including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses"; history of immigration violations; attempts to flee; and manner of entry to the United States. *Id*.

In assessing dangerousness, "[a]lthough an alien's criminal record is surely relevant to a bond assessment, *Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness." *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011), abrogated on other grounds in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). Rather, IJ's must also consider the recency and severity of the offenses." *Id*. Furthermore, under BIA case law, immigration judges may properly "consider not only the nature of a criminal offense but also the specific circumstances surrounding [Respondent's] conduct," *Matter of Siniauskas*, 27 I&N Dec. 207, 208-09 (BIA 2018), as well as "any unfavorable evidence of [his] conduct, including arrests that did not ultimately result in conviction." *Matter of Urena*, 25 I&N Dec. 140, 140 (BIA 2009). Here, the IJ applied the correct legal standard and considered proper factors in denying bond based on Petitioner's danger to the community, including the recency and severity of her criminal history. Specifically, the IJ considered evidence of Petitioner's two previous arrests for domestic violence related offenses, as well as her recent arrest in December 2025 for two counts of child abuse with possible death or gross bodily injury and one count of battery to a spouse.

To the extent that Petitioner challenges the IJ's dangerousness assessment in light of Petitioner's claims that the IJ's determination was based solely on arrests and dismissed charges, the Court lacks the ability to "second-guess the immigration judge's weighing of the evidence." *Calmo v. Sessions*, 2018 WL 2938628, at *4 (holding that where the evidence is

undisputed, "differences in interpretation of the facts" remain "well within the province of the immigration judge"). Complaints about the IJ's weighing of specific pieces of evidence and the ultimate the conclusion the IJ reached must be presented through the normal immigration appeal process. *See Valenzuela v. Semaia,* Case No. 5:25-cv-02853-SSS-RAO, 2025 WL 4041920, at *2 (C.D. Cal. Dec. 10, 2025) ("Although Petitioner may disagree with the outcome of the IJ's determination at the bond hearing, this Court does not have jurisdiction to sit as an appellate body over this issue.").

Therefore, the IJ's decision denying bond was not an abuse of discretion, and there is no legal basis for the Court to find that Respondents failed to comply with its Order.

**III. CONCLUSION AND ORDER**

For the foregoing reasons, Petitioner's motion to reopen habeas proceedings enforce the Court's earlier order (Doc. 27) is **DENIED**. The case remains **CLOSED**.

IT IS SO ORDERED.

Dated: _August 25, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE